UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**APRIL THOMAS,**

        **Plaintiff,**

v.                                                   **Case No: 5:21-cv-254-ACC-PRL**

**LIFESTREAM BEHAVIORAL
CENTER, INC.,**

        **Defendant.**

### REPORT AND RECOMMENDATION

This cause comes before the Court on the parties' Joint Second Amended Motion to Approve Settlement and Dismiss Case (the "Motion"), filed April 11, 2022. (Doc. 35.) Upon consideration, I respectfully recommend that the Motion be granted in part.

    **I.**      **BACKGROUND**

On May 7, 2021, Plaintiff instituted this action against Lifestream Behavioral Center, Inc. ("Lifestream"), alleging violations of the overtime wage provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219. (Doc. 1.) Plaintiff alleges she worked as an adult case manager for Defendant Lifestream from approximately January 30, 2020, to September 2, 2020. (*Id.* ¶¶ 6–7.) Plaintiff asserts that during this time, she routinely worked in excess of 40 hours per week and that Defendant failed to pay her overtime compensation. (*Id.* ¶¶ 8–10.) Defendant responded to the Complaint and denied these claims. (Doc. 5.)

On October 5, 2021, the Court referred the case for mediation, and the undersigned subsequently conducted a settlement conference on November 10, 2021. (Docs. 18, 20.) The parties did not immediately reach a settlement agreement; however, following the settlement conference, the parties continued settlement discussions and, on December 15, 2021, filed a joint motion for settlement approval. (Docs. 26, 31.) The undersigned denied the motion without prejudice due to the parties' failure to address whether the attorney's fee was agreed upon separately and without regard to the amount paid to Plaintiff. (Doc. 32.) The parties thereafter filed an amended motion for settlement approval (Doc. 33), which the undersigned again denied without prejudice due to the inclusion of certain impermissible provisions. (*See* Doc. 34.) The parties have now filed the instant Motion seeking approval.

## II.   STANDARD

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally mandated

minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." *Barrentine*, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

The parties seek judicial review and a determination that their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. *See Lynn's Food Stores*, 679 F.2d at 1354–55. If a settlement is not supervised by the Department of Labor, the only other route for a compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. *Id.* at 1353. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.*

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Id.* at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the

> settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

When evaluating an FLSA settlement agreement, the district court considers whether the settlement is fair and reasonable to the employee, the "internal" factors, and whether the settlement frustrates the purpose of the FLSA, the "external" factors. *Dees v. Hyrdradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–51 (M.D. Fla. 2010). Factors considered "internal" include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Hamilton v. Frito-Lay, Inc.*, No. 6:05-CV-592-ORL-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." *Id.* (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)).[1]

---

[1] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding all decisions from the Fifth Circuit handed down prior to October 1, 1981, are binding on the Eleventh Circuit).

### III. DISCUSSION

#### A. The Settlement Sum

Under 29 U.S.C. § 216(b), an employee damaged by a violation of the FLSA is entitled to unpaid minimum wage and unpaid overtime compensation plus an additional, equal amount, as liquidated damages. Title 29 U.S.C. § 216(b) ("Any employer who violates the provisions of [the FLSA] shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages.")

According to the proposed settlement agreement (the "Agreement"), Defendant has agreed to pay Plaintiff a total of $3,500.00 in unpaid overtime compensation and $3,500.00 in liquidated damages. (Docs. 35 at 2; 35-1 ¶ 3.) Plaintiff initially claimed she was entitled to $14,214.00 in unpaid overtime compensation. (Doc. 8 at 3.) Because Plaintiff will receive less than the amount to which she claimed she was entitled under the FLSA, she has compromised his claim within the meaning of *Lynn's Food*, 679 F.2d at 1354–55.

On review, I find the $3,500.00 Plaintiff has agreed to accept in satisfaction of her claim to be fair and reasonable in comparison to the original claim, considering that all parties are represented by counsel and wish to avoid the risk and expense of further litigation. I also find this amount fair in relation to the nature of the dispute between the parties contesting Plaintiff's entitlement to overtime payments. (*See* Docs. 1, 5.) Thus, I find that the settlement sum represents a fair resolution of a *bona fide*

dispute between the parties and that Plaintiff has not unfairly compromised her claim.

### B. Attorney's Fees

Plaintiff's counsel ("Counsel") will receive $4,000.00 for fees and costs. (Doc. 35 at 2.) Pursuant to 29 U.S.C. § 216(b), "[t]he court [in an FLSA action] shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." The FLSA requires "judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009).

For the Court to determine whether the proposed settlement is reasonable, counsel must first disclose the extent to which the FLSA claim has or will be compromised by the deduction of attorney's fees, costs or expenses pursuant to a contract between the plaintiff and his counsel, or otherwise. *Id.* When a plaintiff receives less than a full recovery, any payment (whether or not agreed to by a defendant) above a reasonable fee improperly detracts from the plaintiff's recovery. Thus, a potential conflict can arise between counsel and their client regarding how much of the plaintiff's total recovery should be allocated to attorney's fees and costs. It is the Court's responsibility to ensure that any such allocation is reasonable. *See id.* Thus, where there is a compromise of the amount due to the plaintiff, the Court should decide the reasonableness of the attorney's fees provision under the parties' settlement agreement using the lodestar method as a guide. In such a case, any compensation for attorney's fees beyond that justified by the lodestar method is unreasonable unless

exceptional circumstances would justify such an award. *Aponte v. Jugamaxa LLC*, No. 6:19-cv-597-Orl-41GJK, 2020 WL 1277527, at *2 (M.D. Fla. Feb. 28, 2020), *report and recommendation adopted sub nom. Aponte v. Jugamaxa LLC*, 6:19-cv-597-Orl-41GJK, 2020 WL 1275468 (M.D. Fla. Mar. 17, 2020).

Here, Plaintiff states that "Plaintiff's recovery and counsel's recovery were not negotiated separately. Rather, Plaintiff and her counsel discussed the fees and costs contemporaneously as counsel for the parties negotiated an overall settlement." (Doc. 35 at 2.) Given this representation, the Court must examine whether Plaintiff's counsel's attorney's fees are justified utilizing the lodestar method.

The Court uses the familiar "lodestar" method to determine a reasonable fee award, which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party moving for fees has the burden of establishing that the hourly rate(s) and hours expended are reasonable. *See Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). "[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (internal quotation marks omitted). As for the hours reasonably expended, counsel must exercise proper "billing judgment" and exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Finally, the party seeking an award of expenses bears the burden of submitting a request that

enables the court to determine what expenses the party incurred and why it is entitled to an award of those expenses. *Loranger v. Stierheim*, 10 F.3d 776, 784 (11th Cir. 1994).

### i. Reasonableness of Hourly Rate

Counsel states his regularly hourly rate is $375.00, but that he has adjusted his hourly rate to $175.00 for the purpose of settlement here. (*See* Doc. 35 at 5.) "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. Fee counsel must "supply the court with specific and detailed evidence from which the court can determine the reasonable hourly rate." *Id.* at 1303. Satisfactory evidence of the prevailing market rate "at a minimum is more than the affidavit of the attorney performing the work," and must address rates actually billed and paid in similar lawsuits. *Id.* at 1299. Where the documentation is inadequate, the district court must still determine a reasonable fee, which it may do without further pleadings or an evidentiary hearing. *Id.* at 1303. This is because the court itself is an expert on the question and "may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Id.* (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir.1940)).

Counsel here fails to address rates actually billed and paid in similar lawsuits. However, the undersigned may still determine a reasonable fee. Other courts in this District have found higher hourly rates to be reasonable. *See, e.g.*, *Premier Trailer*

*Leasing, Inc. v. DM World Transp., LLC*, No. 8:19-cv-2558-T-60AA, 2020 WL 8181665, at *4 (M.D. Fla. Dec. 31, 2020) (noting the Court has previously found $385–$400 as reasonable for commercial litigators with over 15 years of experience and $250–$275 as reasonable for commercial litigators with three years of experience). Here, Counsel has approximately 18 years of experience and has spent nearly his "entire career in the realm of civil litigation." (Doc. 35-2 ¶ 4.) Therefore, based on the undersigned's own knowledge of market rates, and Counsel's declaration (Doc. 35-2), I find that the adjusted hourly rate of $175.00 is reasonable.

### ii. Reasonableness of Hours Expended

The next step in the analysis is to determine what hours were reasonably expended. Attorneys "must exercise their own billing judgment to exclude any hours that are excessive, redundant, or otherwise unnecessary." *Galdames v. N & D Inv. Corp.*, 432 F. App'x 801, 806 (11th Cir. 2011) (internal quotation marks omitted). Courts may cut specific hours, or may engage in "an across-the-board cut," so long as the court adequately explains its reasons for doing so. *Id.*

Counsel seeks compensation for a total of 20.1 hours of time, which Counsel adjusted down from 29.3 hours of time. (Doc. 35-3.) The undersigned has reviewed the billing records and finds that the amount of time expended was reasonable. The billing entries are limited to time spent litigating and settling Plaintiff's FLSA claims and do not include tasks that are clerical, secretarial, or excludable as unnecessary.

Because I find the hourly rates and the time spent litigating the Plaintiff's claims to be reasonable, I recommend that the Court approve an attorneys' fee award of $3,517.50, representing the adjusted attorneys' fees that Counsel seeks.

### iii. Costs

Counsel also seeks "approximately $500.00 in litigation costs." (Doc. 35 at 5.) Counsel does not provide an itemized breakdown of how those costs were allocated. While the undersigned notes that Plaintiff paid a $402.00 filing fee to initiate the instant action,[2] counsel does not present evidence of other costs and the Court cannot otherwise ascertain any amount from the Motion or the exhibits thereto. (*See* Doc. 1.) As such, the undersigned recommends the Court find costs in the amount of $402.00 to be reasonable.

### C. Release

Plaintiff has agreed to release all claims for overtime under the FLSA in the Settlement Agreement. (Doc. 35-1 ¶ 2.) General releases in FLSA cases are frequently viewed as "a 'side deal' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee" and therefore, such releases "confer[] an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno*, 729 F. Supp. 2d at 1351–52 (footnote omitted). As such, "[a] compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny." *Id.* at 1352. Furthermore, releases given to

---

[2] The cost of filing fees is found on the Court's website at: https://www.flmd.uscourts.gov/fees-for-filing-a-case.

numerous unnamed individuals, collectively referred to as "Releasees," are insufficient where the parties are not identified. *Correa v. House of Glass, Inc.*, No. 6:17-cv-676-Orl-28TBS, 2017 WL 8794847, at *4 (M.D. Fla. Oct. 19, 2017) (recommending rejection of the settlement agreement in part because the release extended to numerous unnamed individuals), *denied as moot by*, 2018 WL 1801207 (denying the R&R as moot due to the parties' subsequent filing of a renewed motion for settlement approval); *Schultz v. Tartini at Rock Springs Ridge, LLC*, No. 6:17-cv-815-Orl-37KRS, 2017 WL 11062615, at *2 (M.D. Fla. Sept. 22, 2017) (ordering the parties to file a renewed motion for settlement agreement approval in part because the motion did not address the breadth of the release given to defendants).

 Judges in this District have found releases similar to the one presented here to pass judicial scrutiny because they do not require Plaintiff to release unknown claims that are unrelated to her wage claim. *Pond v. Red Lambda, Inc.*, No. 6:19-cv-1975-ORL-37EJK, 2020 WL 4808744, at *4 (M.D. Fla. Aug. 3, 2020), *report and recommendation adopted*, No. 6:19-cv-1975-ORL-37EJK, 2020 WL 4785449 (M.D. Fla. Aug. 18, 2020); *Batchelor v. Gen. Mar. Corp.*, No. 6:15-cv-2082-Orl-41KRS, 2016 WL 4467136, at *1 (M.D. Fla. Aug. 24, 2016) (approving release where it was "limited to wage claims."). Furthermore, the parties to the FLSA Release are specifically identified. Therefore, because the release provision releases only Plaintiff's FLSA claims against Defendant and does not seek to release other non-FLSA related claims against unnamed parties, I recommend that the Court find this release passes judicial scrutiny. *See Moreno*, 729 F. Supp. 2d at 1351–52 (footnote omitted).

### D. Amendments Provision

The Agreement contains a provision that grants the parties leave to amend the Agreement (the "Amendment Provision"). It provides that "[t]his Agreement may not be amended, modified, altered, or changed, except by a written agreement that is signed by all Parties and that makes specific reference to this Agreement." (Doc. 35-1 ¶ 11.) Generally, approval of a settlement agreement with an amendment provision leaves "the parties free to circumvent *Lynn's Food* review through post hoc modifications of an already-approved agreement." *Dumas v. 1 ABLE REALTY, LLC*, No. 6:17-cv-765-Orl-37KRS, 2018 WL 5020134, at *3 (M.D. Fla. Mar. 9, 2018). As such, I cannot approve an agreement that is not in its "final form, with [] opportunity for amendment." *Id.* However, the undersigned notes that the Agreement contains a severability provision that provides:

> Except as set forth below, should any provision of this Agreement set forth herein be declared illegal or unenforceable by any court of competent jurisdiction, such that it cannot be modified to be enforceable, excluding the release language and the payment obligations set forth above, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

(the "Severability Provision") (Doc. 35-1 ¶ 7.) Judges in this District routinely approve settlement agreements while striking unfair or unenforceable provisions of the agreement when the agreement contains a severability provision. *See, e.g.*, *Encarnacion v. Dannix Painting LLC*, No. 6:18-cv-682-Orl-41KRS, 2018 WL 5084749, at *3 (M.D.

Fla. Aug. 13, 2018)*, report and recommendation adopted*, 2018 WL 5840509 (M.D. Fla. Nov. 8, 2018) (recommending that the contradictory provisions and the general release provision be stricken where the settlement agreement contained a severability provision); *Raynon v. RHA/Fern Park Mr., Inc.*, No. 6:14-cv-1112-Orl-37TBS, 2014 WL 5454395, at *1 (M.D. Fla. Oct. 27, 2014) (approving FLSA settlement agreement while severing jury trial waiver provision).

Because the Severability Provision permits striking the Amendment Provision, the undersigned will sever the Amendment Provision (Doc. 35-1 ¶ 11) from the Agreement.

### E. Retaining Jurisdiction

The parties request that the Court retain jurisdiction to enforce the terms of the amended Settlement Agreement. (Doc. 35 at 5.) However, such requests are typically denied. *See, e.g.*, *Correa v. Goldblatt*, No. 6:10-cv-1656-Orl-28DAB, 2011 WL 4596224, at *3 (M.D. Fla. Sept. 9, 2011) (denying request to retain jurisdiction to enforce terms of FLSA settlement agreement due to the absence of any compelling reason to retain jurisdiction), *report and recommendation adopted*, 2011 WL 4704196 (M.D. Fla. Oct. 4, 2011); *Smither v. Dolphin Pools of SW Fla., Inc.*, No. 2:11-cv-65-FtM-29DNF, 2011 WL 2565494, at *2 (M.D. Fla. June 9, 2011) (denying request to retain jurisdiction to enforce terms of FLSA settlement agreement due to parties' failure to present arguments or reasons in support of retaining jurisdiction), *report and recommendation adopted*, 2011 WL 2580459 (M.D. Fla. June 29, 2011). Because the parties have provided no compelling argument in support of their request, the undersigned

recommends that the Court deny the parties' request to retain jurisdiction to enforce the terms of the settlement.

## IV. RECOMMENDATION

Upon consideration of the foregoing, I respectfully recommend that the Court:

1. **GRANT IN PART** the parties' Joint Amended Motion to Approve Settlement and Dismiss Case (Doc. 35);

2. **FIND** Plaintiff's counsel's reasonable attorney's fees and costs to be $3,919.50.

3. **DENY** the Motion as to the parties' request for the Court to retain jurisdiction;

4. **SEVER** the Amendments Provision (Doc. 35-1 ¶ 11);

5. **FIND** that the parties' Agreement (Doc. 35-1), as revised, is a fair and reasonable resolution of a *bona fide* dispute under the FLSA;

6. **DISMISS** the case with prejudice; and

7. **DIRECT** the Clerk of Court to close the file.

## NOTICE TO PARTIES

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1). **If the parties do not object to this Report and Recommendation, then they may expedite the approval process by filing notices of no objection.**

Recommended in Orlando, Florida on April 13, 2022.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE